IN THE UNITED STATES DISTRICT COURT

FOR THE DISRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| V. : | CRIMINAL NO. 22-074 |
| : | |
| RACHEL MYERS : | |
| : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Rachel Myers, by and through her undersigned counsel, Thomas F. Burke, Esquire, hereby submits this memorandum in mitigation of her sentence in this matter.

**I.   FACTS**

The offense conduct underlying the Information is summarized in paragraphs thirteen (13) through seventeen (17) in the Presentence Investigation Report ("PSI"). The defendant did register two objections to the pre-sentence report's summarization that will be addressed below. The defendant appeared (virtually) before this Honorable Court on November 15, 2022 (virtually) and, in accordance with a written plea agreement, entered a guilty plea to Count Four of the Information. Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), a Class B misdemeanor. A PSI was ordered and a revised PSI was filed on April 30, 2013. This Memorandum follows.

1

## II. DETERMINING AN APPROPRIATE SENTENCE FOR MS. MYERS

A.   Introduction

The post- *Booker* sentencing methodology is well-known and understood. Pursuant to the Third Circuit's ruling in *United States v. Gunter*, at sentencing, district courts should (i) conduct a sentencing guidelines analysis; (ii) formally rule on the motions of both parties, including requests for downward departures; (iii) exercise the sentencing court's discretion by considering the relevant section §3553 factors to impose an appropriate sentence regardless of whether it varies from the sentence calculated under the guidelines. 462 F.3d 237, 247 (3d Cir. 2006) (citations omitted). Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to Class B misdemeanors

B.   **Sentencing Guideline Calculation for Mr. Reppert**

1.   **Offense Level Computation**

Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to Class B misdemeanors. There is no Offense Level Calculation. A Class B Misdemeanor is punishable by up to six (6) months of incarceration and up to five (5) years of probation.

2.   **Criminal Offense History Calculation**

The defense does not object to the criminal offense history calculation included in the presentence report. Ms. Myers was convicted of Driving Under the Influence of Alcohol in 2015. She received a sentence of house arrest followed by probation. The defendant completed that sentence in September of 2016 without any violations. She has zero (0) prior history points.

3.   **Guideline Range**

Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to Class B misdemeanors. There is no Guideline Range. A Class B Misdemeanor is punishable by up to six (6) months of incarceration and up to five (5) years of probation.

**C. Objections to the PSI**

**1.** The defense registered three (3) objections to the pre-sentence report. The first objection was to paragraph fourteen (14) of the presentence report wherein the probation department characterized Ms. Myers intention of going to Washington D.C. was to "stop the election". As was outlined in the defendant's objection, the probation department used a series of texts and forwarded Tweets from Ms. Myers to a Michael Gianos (co-defendant) in the days leading up to the Electoral Vote on January 6th to state that Ms. Myers "intention" was to stop the certification process. A thorough review of those texts and Tweets in no way support the conclusion that it was Ms. Myers intention to prevent the Electoral vote from proceeding through violence. According to the Affidavit of Probable Cause as well as the Statement of Facts, Ms. Myers forwarded two Tweets to the Facebook page of Gianos. One set of Tweets was from a person who goes by the handle "Maximus Uncensored" and the other was "Praying Medic". Each of these Twitter users posted what they believed the Electoral process to be based on their understanding of the Constitution and various federal laws, as well as what Vice President Mike Pence's role was in the process. There is not one scintilla of evidence in these Tweets that suggests violence or the storming of the Capitol as a means of physically stopping the electoral vote. They were tweets from other people as to how (in their opinion) the electoral votes works. Nothing more. There is no evidence that Ms. Myers had any "intention" of stopping the certification process.

4

      The defense objected to another reference by the probation department of her conduct in this case. Again, in paragraph fourteen (14) of the PSR, the probation department stated the Ms. Myers would be free from assaults from counter protestors because she would be "marching with the Proud Boys". This may be simply a matter of semantics but the defense thought it worthy of clarification. The Affidavit of Probable Cause lists a series of texts between Ms. Myers and a Lawrence Stackhouse, wherein Ms. Myers raises concerns about being attacked by counter-protestors and states "I'll be marching with the PB's (Proud Boys) so they stay away from me." These series of texts in no way makes her affiliated with the Proud Boys. The clear, unequivocal import of this text was that if Ms. Myers were to be attacked by counter-protestors, she would seek protection by hiding and marching amid the Proud Boys.

      The third and final objection to the pre-sentence report was to paragraph forty-one (41) wherein the probation department states that the defendant is an "occasional" user of marijuana. Again, this may be a matter of semantics, but saying Ms. Myers is an "occasional" user of marijuana implies that she uses marijuana from time to time and will continue to do so. Your undersigned counsel was present for the pre-sentence interview which was done over three-way telephone, and can verify that when asked by the probation department about her marijuana use, Ms. Myers answered that she tried it a few times in high school and admitted to using a THC edible once during the COVID-19 pandemic lockdowns, due to boredom. She did not state that she is an "occasional" user of marijuana. Ms. Myers currently does not use marijuana.

    **D.   CONSIDERATIONS PURSUANT TO 18 U.S.C. SECTION 3553 (a)**

      Section 3553 (a)(2) identifies the specific sentencing needs the Court must address to ensure that every sentence reflects the seriousness of the underlying offense, promotes respect for the law, affords adequate deterrence, and protection of the community, and provides

5

educational or vocational training, or other correctional treatment in the most effective manner. Of course, these §3553(a)(2) factors are simply a restatement of the traditional goals of sentencing: punishment, deterrence, the protection of society, and rehabilitation. These goals, formerly relegated to an afterthought by the U.S. Sentencing Commission, have been reinvigorated by the Supreme Court in *Booker*.  In determining a sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors: (1)"the nature and circumstances of the offense and the history and characteristics of the defendants," see 18 U.S.C. §3553(a); (2) "the kinds of sentences available," *see* 18 U.S.C. §3553(a)(3);(3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *see* 18 U.S.C. §3553(a)(6); and (4) "the need to provide restitution to any victims of the offense; see 18 U.S.C. §3553(a)(7).

      The following factors must be considered when determining what type of sentence is required, but not greater than necessary to satisfy the purposes of sentencing.

      1) <u>The nature and circumstance of the offense</u>

      In no way does Ms. Myers seek to minimize or make excuses for the nature and circumstances of the crime to which she has pled guilty.  Ms. Myers went to Washington D.C. on January 6th to participate in a public rally.  There is nothing criminal in Ms. Myers exercise of her right to free speech and to peaceably assemble.  However, Ms. Myers fully acknowledges, by her guilty plea, that her entrance into the Capitol Building during the rally was outside her right to peaceably assemble, and was a crime.  There is no evidence to suggest that Ms. Myers was planning to use violence on any persons or as a means to stop the electoral process.  As per the Statement of the Offense, Ms. Myers, along with others, entered the Capitol Building at approximately 2:22 p.m., wandered through the Senate Doors and the Rotunda area, and left the

building at 2:33 p.m.  At no time while she was in the Capitol did Ms. Myers employ any violence towards anyone, threaten police officers, or damage any part of the Capitol Building.

    2) <u>History and characteristics of the defendant</u>

Ms. Myers is a thirty-one (31) year old woman who resides by herself in Philadelphia. She has earned her high school diploma.  She is not married and has no children.  Ms. Myers has supported herself since her high school graduation in 2009 through various jobs, mostly in the restaurant business.  Since 2015, Ms. Myers has been employed by Delilah's Gentlemen's Club and Steakhouse as a bartender.  She maintains that employment today.

Ms. Myers was raised in Bucks County Pennsylvania.  Her mother and father divorced when she was one (1) year's old and she was primarily raised by her father.  Ms. Myers mother passed away from cancer when she was a teenager.  Ms. Myers has two siblings, a brother and sister.  Both live in the area where Ms. Myers was raised.  Ms. Myers reports no issues with her upbringing, and maintains a good relationship with her family.  She has no drug or alcohol dependencies

    3) <u>Need to promote respect for the law and just punishment for the offense</u>

Ms. Myers is acutely aware that her conduct was wrong and she greatly regrets participating not only in the rally itself, but for going so far as to enter the Capitol Building in contravention of the law.  She fully understands her culpability as evidenced by her immediate decision to plead guilty.  At no time between her arrest and plea did Ms. Myers inquire or urge your undersigned counsel to push for a trial.  The delay between her initial appearance and the final plea in November of 2022 was due to the government's inability to provide a plea agreement sooner.  This delay is understandable given the number of plea agreements the government needed to prepare.

7

It is worth noting here that immediately after exiting the Capitol Building, the defendant walked back to her hotel room, due to the realization of her actions. She did not stay at the Capital until the end of the rally. She is remorseful and has suffered scorn and humiliation from her friends and family due to the notoriety of her crime.[1] Ms. Myers knows what she did was wrong.

    4) <u>Need to deter defendant from committing similar conduct</u>

Given that uniqueness of the 2020 elections, it hardly seems possible that such a similar circumstance would evolve such that the defendant would ever engage in similar conduct. This Court should know that since her arrest, Ms. Myers has shut down her various social media outlets with the exception of Twitter. Regarding her Twitter account, Ms. Myers only uses it to view other people's posts and has not posted anything, political or otherwise, on her page. The defendant has disavowed any publicizing of her political views on any social media outlets. Her crime for which she stands to be sentenced is extremely unlikely to ever occur again.

    IV.    **THE APPROPRIATE SENTENCE FOR RACHEL MYERS**

In using the 3553(a) factors to form the appropriate sentence for Rachel Myers, this court needs to impose a sentence that is sufficient, but not greater than necessary to achieve the goals of §3553(a). In addition to the nature and circumstances of the offense and history and characteristics of the defendant, this Court also needs to weigh the seriousness of the offense, the need to promote respect for the law, to afford adequate deterrence, to provide needed educational or vocational training, and the need to avoid unwarranted sentencing disparities. As was outlined above, the defendant recognizes the seriousness of her offense, has been subject to public

---

[1] See Philadelphia Inquirer article by Jeremy Roebuck, entitled "A Delilah's Gentlemen's club worker admits to storming the Capitol with a pair of aspiring Proud Boys" https://www.inquirer.com/news/rachel-myers-capitol-riot-delilahs-philly-lawrence-stackhouse-michael-gianos-20221115.html?utm

scrutiny for her conduct, has little chance of similar conduct ever occurring again and is remorseful. She is not in need of educations or vocational training nor is she in need of medical or other correctional treatment. Her conduct consisted of entering and remaining in the Capitol Building for eleven (11) minutes. She did not employ any threats, physical violence or damage any property while inside the Capitol. She immediately left Washington D.C. afterwards. She shut down her social media posts, and finally she pled guilty to an Information before this Court. The defense respectfully avers that a non-incarceration sentence is appropriate in this case, and meets all the above mentioned §3553(a) factors.

### III. CONCLUSION

Based on all of the above-factors the defendant respectfully requests that this Court sentence her to a period of probation consistent with §3553(a) factors.

Respectfully submitted,

***Thomas F. Burke, Esquire***
Thomas F. Burke, Esquire
Counsel to Rachel Myer

## CERTIFICATE OF SERVICE

      I, Thomas F. Burke, Esquire, hereby certify that I have filed a copy of the foregoing Sentencing Memorandum upon the following persons via the electronic filing system:

United States Attorney's Office

c/o AUSA Eric Boylan

601 D Street NW

Washington, DC 20001

 

/s/ Thomas F. Burke, Esquire

Thomas F. Burke, Esquire

Counsel for Rachel Myers